## UNITED STATES DISTRICT COURT
## DISTRICT OF MARYLAND

PHYLLIS M. WESTMORELAND,

    Plaintiff,

    v.

                           Civil Action No. TDC-14-0821

PRINCE GEORGE'S COUNTY,

    Defendant.

### MEMORANDUM OPINION

Plaintiff Phyllis M. Westmoreland ("Westmoreland"), a former Prince George's County firefighter, brings this action against Defendant Prince George's County, Maryland ("the County") alleging that because of her gender, she was subjected to a hostile work environment, disparate treatment, and constructive discharge, and that she was retaliated against in the form of removal from duty and constructive discharge, all in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.,* and the Maryland Fair Employment Practices Act ("MFEPA"), Md. Code, State Government § 20-606. Presently pending before the Court is the County's Motion to Dismiss, or, in the Alternative, Motion for Summary Judgment. ECF No. 11. The Court has reviewed the pleadings and supporting documents and heard oral argument on February 4, 2015. For the reasons outlined below, the Motion, construed as a Motion to Dismiss, is GRANTED in part and DENIED in part.

### BACKGROUND

Westmoreland is an African American woman who began working at the Prince George's County Fire Department ("Department") in 1989. Am. Compl., ECF No. 9, ¶ 9. At that time,

she was one of 32 women in the Department, out of a total of approximately 650 employees.  *Id.*
¶ 15.  For the majority of her career, Westmoreland "received high commendations, performance
reviews and awards," and accordingly "steadily rose through the ranks."  *Id.* ¶¶ 10-11.  In April
2006, Westmoreland was promoted to the rank of Fire Lieutenant. *Id.* ¶ 20.  In her May 2006
performance review, Westmoreland was given an "outstanding" rating of 3.95 out of a possible
4.0.  *Id.* ¶¶ 12-13.

I.    **Westmoreland's Tenure at the Fire/Emergency Medical Services Training Academy**

Seeking to expand her experience, Westmoreland asked to be and was assigned to the
Department's Fire/Emergency Medical Services ("EMS") Training Academy.  While at the
Academy, Westmoreland noticed what she believed were disparities in the opportunities
available to women in the Department.  *Id.* ¶ 16.  In response, she "created and participated in"
support groups for fellow female firefighters and began to advocate to senior management for
women's rights.  *Id.*  "Almost immediately" after Westmoreland began these efforts, "male
colleagues and supervisors" began to harass her. *Id.* ¶ 17.  Then, in April 2006, the Department
determined that there had been cheating as part of the Academy's Officer Candidate School
Examination. *Id.* ¶ 19.  Although the Department concluded that 38 individuals were involved,
Westmoreland was "singled out for discipline." *Id.* ¶ 19.   The charges against Westmoreland
stemming from that scandal were later dismissed. *Id.*

On June 30, 2006, as a result of the Department's response to the cheating scandal and
continuing harassment stemming from it, Westmoreland filed an internal equal employment
opportunity ("EEO") complaint. *Id.* ¶¶ 21-22.  Her position at the Academy quickly became
tenuous.  On July 3, 2006, she was given orders to report back to field duty. *Id.* ¶ 23.  When she
protested the transfer, the orders were rescinded. *Id.* ¶ 24.  However, on October 10, 2006, new

2

transfer orders were issued that assigned her to field duty at Fire Station 40. *Id.* ¶ 25. On the heels of that transfer, on October 13, 2006, Westmoreland received her "first ever" negative performance review: a 1.95 rating, down from her May 2006 3.95 rating. *Id.* ¶ 26.

Westmoreland reported for duty at Fire Station 40 on October 18, 2006. *Id.* ¶ 27. That same day, the Department's discipline coordinator hand-delivered to her two disciplinary notices stemming from events at the Academy. *Id.* ¶¶ 27-28. On October 20, 2006, Westmoreland filed a complaint against the Department with the U.S. Equal Employment Opportunity Commission ("EEOC"), alleging that she had been subjected to gender and race discrimination while at the Academy and that she was transferred to Station 40 in retaliation for filing the June 30, 2006 internal EEO Complaint. *Id.* ¶ 29. Three more disciplinary charges followed in the wake of Westmoreland's EEOC Complaint, all based on events at the Academy. *Id.* ¶¶ 30, 32, 34-35. Those charges made their way through the Department's administrative process over the course of the next year, with the Department ultimately suspending Westmoreland for four days and placing a Written Notice of Unsatisfactory Performance in her personnel file. *Id.* ¶¶ 40, 43.

On April 21, 2008, the EEOC's Baltimore Field Office concluded its investigation of Westmoreland's EEOC Complaint, finding that Westmoreland had been subjected to race and gender discrimination, and that the Department had retaliated against her because of her complaints. *Westmoreland v. Prince George's Cnty*, No. AW-09-2453, Am. Compl. (D. Md. Sept. 2, 2010), ECF No. 29 ¶ 36. On June 22, 2009, Westmoreland received her right-to-sue letter based on the October 2006 EEOC charge. *Id.*, Compl. Ex. 1, ECF No. 1-1.

## II.    Westmoreland's Tenure at Station 40

Meanwhile, Westmoreland was facing new hostility at Station 40. Apparently taking their cue from Academy staff, Westmoreland's supervisors at Station 40 fostered a culture of

3

exclusion. *Westmoreland v. Prince George's Cnty.*, No. TDC-14-0821, Am. Compl. (D. Md. May 9, 2014), ECF No. 9 ¶ 28. In February 2007, the Volunteer Chief of the Station told Westmoreland that she did not belong there. *Id.* ¶ 38. The Station's Battalion Chief, on instruction from the Fire Chief, was "secretly documenting" her activities. *Id.* ¶ 39. The rank and file followed suit, taking pains to exclude Westmoreland from station life and to sabotage her effectiveness. *Id.* ¶¶ 28, 36. Her colleagues cooked communal dinners that they knew Westmoreland could not eat, tampered with her safety equipment, and ignored her orders. *Id.* ¶ 36. Westmoreland's professional reputation suffered, with "unfounded rumors and allegations" swirling around her. *Id.* ¶ 41. Apparently as a result of those unfounded allegations, with no prior information or warning, Westmoreland was placed on a 30-day suspension on March 22, 2007. *Id.*

Over the ensuing two years, Westmoreland continued to experience "insubordination and hostility" from her coworkers and supervisors at Station 40. *Id.* ¶ 44. Westmoreland informally complained to supervisors about the ongoing harassment—including on December 5, 2007; December 14, 2007; May 16, 2008; and December 6, 2008—but no responsive action was ever taken. *Id.* ¶¶ 45, 48. On December 9, 2008, Westmoreland formalized her prior complaints by detailing them in an email to her immediate supervisor, Captain James Reilly. *Id.* ¶ 49. In that email she also complained about the Station's unresponsiveness to her previous complaints. *Id.* ¶ 49.

On January 19, 2009, after a disagreement with a male colleague, Westmoreland was ordered off duty and instructed to undergo counseling. *Id.* ¶ 50. Two days later, Captain Reilly contacted Westmoreland's counselor and reported—falsely, Westmoreland contends—that Westmoreland was ordered off duty because she had threatened to shoot and kill "everyone in

the firehouse." *Id.* ¶ 51.  In February 2009, because of the ongoing stress at the Station, Westmoreland's psychiatrist ordered her not to work. *Id.* ¶ 53.  Westmoreland was allowed to return to duty in a "non-operational" capacity on April 3, 2009, an accommodation provided by the Department on the recommendation of Westmoreland's physician and her counselor. *Id.* ¶ 54. On July 6, 2009, the Department rescinded the accommodation, against the advice of Westmoreland's physician and counselor, and ordered her to return to full duty. *Id.* Rather than report to an assignment she felt would compromise her mental health, Westmoreland used her sick leave. *Id.* Westmoreland remained on sick leave for the next three months. *Id.* ¶¶ 54, 57.

During that time, Westmoreland pursued external remedies for her complaints.  On July 24, 2009, she sent a letter to two Prince George's County Human Relations Commissioners, but received no response. *Id.* ¶ 56.  On September 29, 2009, she filed a second grievance with the EEOC, this one focusing on the events at Station 40. *Id.* ¶ 58.  In that Charge, she alleged that she had been retaliated against because of her prior complaints, particularly when she was removed from duty on January 19, 2009.  Mot. Dismiss, Ex. 5 at 1, ECF No. 11-11.  She also complained about the Department's refusal, in July 2009, to accommodate her request to remain on "non-operational" duty. *Id.*  She concluded that she had been "discriminated against due to retaliation as to unequal terms and conditions of employment and involuntary retirement." *Id.* On October 8, 2009, with all available leave exhausted and with continued unresponsiveness from the Department, Westmoreland "felt she had no other choice" but to submit her resignation letter.  Am. Compl. ¶ 57.

Over the next three years, Westmoreland's September 2009 EEOC Complaint made its way through that agency's administrative process.  On December 6, 2012, the EEOC issued its determination that there was "reasonable cause to believe that [the Department] discriminated

against [Westmoreland] when it subject her to continuing retaliation with respect to unequal terms and conditions of employment, involuntary retirement, harassment and discipline" in violation of Title VII. Am. Compl., Ex. 1, ECF No. 9-1 at 2. On December 20, 2013, the EEOC issued Westmoreland a right-to-sue letter. *Id.*, Ex. 2, ECF No. 1-2.

### III.   **Westmoreland's 2009 Civil Action**

On September 18, 2009, while still employed by the Department and before filing her EEOC complaint about the events at Station 40, Westmoreland filed suit in this Court against the County. *Westmoreland*, No. AW-09-2453, Compl., ECF No. 1. In her September 2, 2010 Amended Complaint, ECF No. 29, Westmoreland alleged eight causes of action: (I) gender discrimination based on the July 3, 2006 attempt to transfer her out of the Academy; (II) race discrimination based on the July 3, 2006 attempt to transfer her out of the Academy; (III) gender discrimination based on her reassignment to Station 40; (IV) race discrimination based on her reassignment to Station 40; (V) gender discrimination based on the Department's failure to investigate her complaints; (VI) race discrimination based on the Department's failure to investigate her complaints; (VII) retaliation based on her transfer to Station 40; and (VIII) hostile work environment based on gender. *See id.*, Am. Compl. ¶¶ 38-86.

The County filed an Answer, ECF No. 34, addressing counts I, II, III, IV, and VII, and a Motion to Dismiss, ECF No. 33, which asked the Court to dismiss counts V, VI, and VIII on the basis that the Court lacked subject-matter jurisdiction over some claims and that others failed to state a claim upon which relief could be granted. *See* Fed. R. Civ. P. 12(b)(1) & (6). In an August 31, 2011 Memorandum Opinion and September 1, 2011 Order, the Court denied the County's Motion, and the case entered discovery. *Westmoreland*, No. AW-09-2453, ECF Nos. 50 & 52.

On February 15, 2012, after the close of discovery, the County filed a Motion for Summary Judgment, ECF No. 55, which Westmoreland opposed, ECF No. 57. In a June 26, 2012 Memorandum Opinion and Order, ECF Nos. 63 & 64, the Court granted the County's motion as to Westmoreland's hostile work environment claim (Count VIII), but denied it as to the remaining seven counts. The Court then slated the case for trial on the remaining seven counts.

On March 19, 2013 and March 25, 2013, the County filed Motions *in Limine* seeking, in relevant part, to exclude any evidence, documents, or testimony related to Westmoreland's September 29, 2009 EEOC Complaint, which stemmed from her experiences at Station 40. *Id.*, ECF Nos. 70 & 77. The County sought, in particular, to exclude medical records from Westmoreland's counselor and psychotherapist, whom she saw after she was ordered by her supervisors at Station 40 to undergo counseling. *See id.*, Mem. Supp. Second Mot. *in Limine* at 4-5, ECF No. 77-1. The County explained that if Westmoreland were allowed to introduce evidence related to her 2009 EEOC charge, she would "have two bites at the apple because she could raise these allegations in the instant case and then file a second lawsuit in federal court raising these same allegations again." *Id.* at 5. In Orders dated April 5, 2013, the Court granted the County's Motions *in Limine* as to Westmoreland's 2009 EEOC charge and thus precluded Westmoreland from introducing any documentary or testimonial evidence relating to the alleged discrimination at Station 40. *Id.*, ECF Nos. 82 & 83.

The case proceeded to trial beginning on April 8, 2013. In a bench conference before opening statements, Westmoreland's attorney revisited the issue of Westmoreland's 2009 mental-health treatment. Specifically, counsel asked to call Westmoreland's counselor and psychotherapist as witnesses. *Westmoreland*, No. AW-09-2453, April 8, 2013 Trial Tr. (D. Md.

Aug. 9, 2013), ECF No. 121 at 7. Counsel clarified that Westmoreland's claim was not one of a "hostile work environment that she had to endure while she was at Station 40," but was one that based on "all these things" that went on in her last years at the Department, she was "forced to retire." *Id.* In counsel's estimation, Westmoreland's 2009 mental-health treatment was highly relevant to Westmoreland's retirement decision and thus should be before the jury. *Id.* The Court was skeptical, explaining that if Westmoreland was "having difficulties" in 2006, her counseling records from 2009—three years later—were of questionable relevance. *Id.* at 9. However, the Court reserved decision on the issue until after Westmoreland's testimony about her transfer to Station 40. *Id.*

In her testimony, Westmoreland described her initial appointment to the Academy, the Academy cheating scandal, the July 2006 failed attempt to transfer her out of the Academy, her October 2006 transfer to Station 40, and the multiple disciplinary charges later levied against her based on events at the Academy. *See Westmoreland*, No. AW-09-2453, April 8 and April 9, 2013 Trial Tr. (D. Md. Aug. 9, 2013), ECF Nos. 121 and 122. She did not testify in any depth about the alleged harassment she suffered while at Station 40. *See id.* She did testify that she retired from the Department in 2009, read an excerpt from her retirement letter, and explained that she did not want to retire but felt she had to because she had "no hope" that the conditions of her employment would change and "no faith" in the Department. *Id.*, April 8, 2013 Trial Tr. at 106.

In a bench conference after Westmoreland's direct examination, the Court returned to the question of the 2009 medical records. The Court explained to Westmoreland's counsel that there was "no claim" for constructive discharge in the Complaint. *Id.* at 103. Counsel replied that the claim was a "notice pleading." *Id.* Counsel for the County disputed that representation,

remarking that "there was no constructive discharge claim, because if there were we would have moved [to dismiss it]." *Id.* at 104. The Court agreed with the County, noting that the constructive discharge claim was "not there" in the Complaint and so was "not before us right now." *Id.* Accordingly, the Court precluded Westmoreland from calling her counselor and psychotherapist as witnesses. *Id.* at 105.

On April 11, 2013, at the close of the defense case, Westmoreland and the County each made an oral motion for judgment as a matter of law. Westmoreland sought judgment as a matter of law on her retaliation claim (Count VII). *See id.*, April 11, 2013 Trial Tr., (D. Md. Aug. 14, 2013) ECF No. 124 at 72-75. The County requested judgment as a matter of law on the retaliation claim and Westmoreland's remaining six gender and race discrimination claims. *See id.* at 75-79. The Court denied both motions on the retaliation claim, but granted the County's motion as to the gender and race discrimination claims. *See id.* at 83-88. On April 12, 2013, the retaliation claim went to the jury. That same day, the jury returned a verdict finding that the County had retaliated against Westmoreland by transferring her to Station 40 and awarding Westmoreland $350,000 in damages. *See id.*, Jury Verdict (D. Md. Apr. 12, 2013), ECF No. 102. The damages were later reduced by the Court to the statutory cap of $300,000. *See id.*, Order (D. Md. Apr. 22, 2013), ECF No. 106.

## IV.   The Present Case

On March 18, 2014, Westmoreland filed the present suit, ECF No. 1, and amended her complaint on May 9, 2014, ECF No. 9. In the Amended Complaint, Westmoreland alleges six causes of action under both Title VII and MFEPA: (I) hostile work environment at Station 40 based on gender; (II) retaliation in the form of removal from duty based on her December 9, 2008 complaint to her supervisor; (III) retaliation in the form of discipline based on the five

disciplinary offenses levied against her in 2006-2007 in response to her October 2006 EEOC Complaint; (IV) retaliation in the form of constructive discharge in response to her October 2006 EEOC Complaint; (V) gender discrimination based on disparate treatment in discipline; and (VI) gender discrimination based on disparate treatment through constructive discharge.

On May 23, 2014, the County filed a Motion to Dismiss for Failure to State a Claim, or, in the Alternative, a Motion for Summary Judgment. The County makes nine arguments: (1) Westmoreland's claims are barred by the doctrine of laches; (2) Westmoreland's claims are barred by the doctrine of *res judicata*; (3) Westmoreland failed to exhaust her administrative remedies; (4) Westmoreland's Title VII and § 1983 claims are barred by the statute of limitations; (5) Westmoreland's state claims are barred by the statute of limitations; (6) Westmoreland's state claims are barred because she failed to provide the requisite notice of tort claims; (7) Westmoreland cannot prove causation on her retaliation claims; (8) Westmoreland's disparate treatment claim fails because she refers to no comparators; and (9) judicial estoppel bars Westmoreland's hostile work environment claim.

On June 5, 2014, Westmoreland filed a Memorandum in Opposition to the County's Motion. ECF No. 12. The County filed its Reply Memorandum on June 23, 2014. ECF No. 14. The Court heard oral argument on February 4, 2015. On February 6, 2015, Westmoreland and the County each submitted a Supplemental Response addressing issues raised at the hearing. ECF Nos. 19 & 20.

## DISCUSSION

### I.  Legal Standards

The County has moved to dismiss or, alternatively, for summary judgment, and has attached 11 exhibits to its Motion, including four affidavits and internal Department

correspondence about some of the events at issue.  In seeking dismissal, the County has alleged

that certain counts should be dismissed for lack of subject-matter jurisdiction, Fed. R. Civ. P.

12(b)(1), and that others should be dismissed for failure to state a claim, Fed. R. Civ. P. 12(b)(6).

### A.  Motion to Dismiss for Lack of Subject-Matter Jurisdiction

To the extent that the County seeks dismissal of Counts I, V, and VI based on a failure to

exhaust administrative remedies, the Motion should be construed as a motion to dismiss for lack

of subject-matter jurisdiction. Mem. Supp. Mot. Dismiss at 4, 14-15; Fed. R. Civ. P. 12(b)(1);

*Jones v. Calvert Group, Ltd,* 551 F.3d 297, 300-01 (4th Cir. 2009).[1]  On a Rule 12(b)(1) motion,

the plaintiff bears the burden of proving that subject-matter jurisdiction exists. *See Evans v. B.F.

Perkins Co.*, 166 F.3d 642, 647 (4th Cir. 1999).  Because this is a factual dispute over whether

such exhaustion has occurred, the Court may consider external materials in resolving this issue.

*Kerns v. United States,* 585 F.3d 187, 192 (4th Cir. 2009) (citing *Adams v. Bain,* 698 F.2d 1213,

1219 (4th Cir. 1982)).

### B.  Motion to Dismiss for Failure to State a Claim

In deciding a Rule 12(b)(6) motion to dismiss, the Court must determine whether the

complaint alleges facts sufficient to state a plausible claim for relief. *Ashcroft v. Iqbal,* 556 U.S.

662, 678 (2009).  A claim is plausible when "the plaintiff pleads factual content that allows the

Court to draw the reasonable inference that the defendant is liable for the misconduct alleged."

*Id.*  While a plaintiff in a discrimination case need not always plead a *prima facie* case under

---

[1] Whether failure to exhaust administrative remedies is always a subject-matter jurisdiction
question has not been definitively established. The Supreme Court has noted that "[o]n the
subject-matter jurisdiction/ingredient-of-claim-for-relief dichotomy, this Court and others have
been less than meticulous," *Arbaugh* v. *Y & H Corporation,* 546 U.S. 500, 511 (2006), and has
"cautioned ... against profligate use of the term ... 'jurisdictional.'" *Union Pacific Railroad Co.
v. Brotherhood of Locomotive Engineers,* 558 U.S. 67, 82 (2009). Notably, the Fourth Circuit has
held that the question of whether an administrative claim was timely filed with the EEOC is *not*
jurisdictional. *Edelman* v. *Lynchburg College,* 300 F.3d 400, 404 (4th Cir. 2002).

*McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), to state a plausible claim, *see Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 510–15 (2002), the "[f]actual allegations must be enough to raise a right to relief above the speculative level," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). In making such a determination, the Court must examine the complaint as a whole, consider the factual allegations in the complaint as true, and construe the factual allegations in the light most favorable to the plaintiff. *Albright v. Oliver*, 510 U.S. 266, 268 (1994); *Lambeth v. Bd. of Comm'rs of Davidson Cnty.*, 407 F.3d 266, 268 (4th Cir. 2005).

### C.  Motion to Dismiss vs. Motion for Summary Judgment

Generally, when deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court considers only the complaint and any attached documents "integral to the complaint." *Sec'y of State for Defence v. Trimble Navigation Ltd.*, 484 F.3d 700, 705 (4th Cir. 2007). If a court considers matters outside the pleadings, it must treat the motion as a motion for summary judgment. Fed. R. Civ. P. 12(d).  However, a court may take judicial notice of documents from other court proceedings and other matters of public record in conjunction with a Rule 12(b)(6) motion without converting it to a motion for summary judgment.  *See Philips v. Pitt County Memorial Hosp.,* 572 F.3d 176, 180 (4th Cir. 2009) (citing *Papasan v. Allain,* 478 U.S. 265, 268 n.1 (1986)).

A court can convert a motion to dismiss to one for summary judgment and thereby consult matters outside the pleadings only if it gives the nonmoving party "a reasonable opportunity to present all the material that is pertinent to the motion."  *Gay v. Wall*, 761 F.2d 175, 177 (4th Cir. 1985) (citation and internal quotations omitted).  "Reasonable opportunity" has two requirements: (1) the nonmoving party must have some indication that the court is treating the 12(b)(6) motion as a motion for summary judgment, and (2) the nonmoving party

"must be afforded a reasonable opportunity for discovery" to obtain information essential to oppose the motion. *Id.* The notice requirement is not onerous, requiring only that the nonmoving party be aware that material outside the pleadings is pending before the Court. *Id.* Here, the notice requirement is met. The County indicated in the title to its Motion that it was alternatively a Motion for Summary Judgment. Westmoreland acknowledges that she has been given notice by titling her Response as one in opposition to the "Motion to Dismiss and in the Alternative, Motion for Summary Judgment."

The reasonable opportunity requirement is more demanding. To show that a reasonable opportunity for discovery has not been afforded, the nonmoving party must file an affidavit or declaration under Rule 56(d) explaining why "for specified reasons, it cannot present facts essential to justify its opposition." Fed. R. Civ. P. 56(d); *see Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 245 (4th Cir. 2002); *Hamilton v. Mayor & City Council of Balt.*, 807 F. Supp. 2d 331, 341 (D. Md. 2011). Although this case has been through administrative litigation, it is not clear what if any discovery was conducted as part of the EEOC process, or whether Westmoreland has ready access to that information. Westmoreland indicates as much, noting that the County's Motion is "premature" because there has been "no discovery." Resp. in Opp'n at 5. In an accompanying Rule 56(d) affidavit,[2] ECF No. 10-1, Westmoreland's counsel describes the discovery she believes would be necessary for an adequate response to the County's Motion for Summary Judgment, including depositions of the witnesses whose affidavits accompany the County's motion and production of all documents provided to the EEOC by the County, all documents in Westmoreland's personnel file, and any information

---

[2] This affidavit is not appended to ECF No. 12, but to ECF No. 10, an earlier Response in Opposition that Westmoreland submitted, but which was supplanted by the later Response. *See* Resp. in Opp'n, Ex. 1, ECF No. 10-1.

about the race and gender of similarly situated employees. Affidavit at 1. With such substantial discovery to be sought, Westmoreland accordingly "invok[es]" Rule 56(d) to ask the Court either to deny the County's Motion for Summary Judgment or postpone considering it until discovery is completed. Resp. in Opp'n at 15.

In light of the potential scope of the factual record in this case, and considering that the claims involve the actions of a number of individuals over a substantial period of time, it would be inappropriate to expect Westmoreland to competently oppose a motion for summary judgment in the absence of any discovery. Thus, the Court will not treat the County's Motion as one for summary judgment. Except in addressing the motion to dismiss for lack of subject-matter jurisdiction, Fed. R. Civ. P. 12(b)(1), the Court excludes all attached exhibits from consideration and construes the County's filing as a motion to dismiss for failure to state a claim. *See* Fed. R. Civ. P. 12(b)(6).

## II.    Exhaustion of Administrative Remedies

The County's subject-matter jurisdiction argument centers on its contention that Westmoreland failed to exhaust administrative remedies as to Counts I, V, and VI of the Amended Complaint. Specifically, the County asserts that those counts, which allege a hostile work environment based on gender, gender discrimination based on disparate treatment in discipline, and gender discrimination based on disparate treatment through constructive discharge, fall outside the scope of Westmoreland's 2009 EEOC charge, which "identifie[d] only retaliation as the basis" for the grievance. Mem. Supp. Mot. Dismiss at 15.

The "EEOC charge defines the scope of the plaintiff's right to institute a civil suit." *Bryant v. Bell Atlantic Maryland, Inc.*, 288 F.3d 124, 132 (4th Cir. 2002). A court in a civil action may consider "only those discrimination claims stated in the initial [EEOC] charge, those

reasonably related to the original complaint, and those developed by reasonable investigation of the original complaint." *Jones,* 551 F.3d at 300 (quoting *Evans v. Techs. Applications & Serv. Co.,* 80 F.3d 954, 963 (4th Cir.1996)). Because the principal purpose of this exhaustion requirement is to place the defendant on notice of the alleged violations, if a defendant has adequate notice of a claim, the plaintiff should not be held to "overly technical" requirements that turn the exhaustion requirement into "a tripwire for hapless plaintiffs." *Sydnor v. Fairfax County, Va.,* 681 F.3d 591, 593-94 (4th Cir. 2012).

Notably, however, "a claim in formal litigation will generally be barred if the EEOC charge alleges discrimination on one basis, such as race, and the formal litigation claim alleges discrimination on a separate basis, such as sex." *Jones*, 551 F.3d at 300 (finding no exhaustion of age, sex, or race discrimination claims when only the retaliation box was checked on the EEOC Charge); *Snydor*, 681 F.3d at 593-94 ("We have therefore not found exhaustion where . . . a charge alleges only retaliation but the complaint alleges racial discrimination as well."); *Bryant*, 288 F.3d at 132-33 (finding no exhaustion of retaliation, color, and sex discrimination claims where the EEOC charge and investigation related only to race discrimination).

Here, Westmoreland's EEOC Charge specifically includes a check in the box for "retaliation" as the basis for alleged discrimination, but does not include a check in the box for "gender." *See* Mot. Dismiss, Ex. 5 at 1 & 2, ECF No. 11-11. Although the check boxes are not necessarily dispositive on this issue, some allegation of gender discrimination should appear in the narrative description in the EEOC Charge. *Chacko v. Patuxent Institution*, 429 F.3d 505, 509 (4th Cir. 2005) ("[T]he factual allegations made in formal litigation must correspond to those set forth in the administrative charge."). There is none. The narrative makes only assertions such as "I have suffered continuing retaliation," and "I believe I was discriminated against due to

15

retaliation as to unequal terms and conditions of employment and involuntary retirement." Mot.
Dismiss, Ex. 5 at 1.  Likewise, the EEOC Determination document states that an "analysis of the
evidence supported [Westmoreland's] allegations of retaliation," and concluded that there was
reasonable cause to believe that Westmoreland had been subjected to "continuing retaliation with
respect to unequal terms and conditions of employment, involuntary retirement, harassment and
discipline." Compl., Ex. 1, ECF No. 1-1 at 2.   The Determination contains no reference to the
EEOC having received, considered, or investigated claims of gender discrimination, whether
relating to a hostile work environment, disparate treatment in discipline, or disparate treatment
through constructive discharge.  *See id.*  Because the Charge alleges only retaliation, and the
EEOC's investigation into the Charge focused only on retaliation, Westmoreland's present
allegations of gender discrimination have not been administratively exhausted.   Counts I, V, and
VI are therefore dismissed for lack of subject-matter jurisdiction.

## III.    Res Judicata

The County also argues that Westmoreland's claims are precluded by the judgment in
*Westmoreland v. Prince George's County*, No. AW-09-2453 (D. Md. Apr. 22, 2013).  *Res
judicata*, or claim preclusion, dictates that a prior judgment between the same parties precludes
subsequent litigation on those matters actually and necessarily resolved in the first adjudication.
*In re Varat Enters., Inc.*, 81 F.3d 1310, 1314–15 (4th Cir. 1996).  *Res judicata* applies when
three conditions are met: (1) the prior judgment was final and on the merits; (2) the parties are
identical, or in privity, in the two actions; and (3) the claims in the second matter are based upon
the same cause of action as the first suit.  *Kenny v. Quigg*, 820 F.2d 665, 669 (4th Cir. 1987).
Claims are based on the same cause of action if they "arise[] out of the same transaction or series
of transactions as the claim resolved by the prior judgment."  *Laurel Sand & Gravel, Inc. v.*

*Wilson*, 519 F.3d 156, 162 (4th Cir. 2008) (internal citations and quotations omitted).  If all three elements are present, the prior judgment bars litigation of not only every matter actually adjudicated in the earlier case, but also every claim stemming from the transaction at issue in that prior case.  *Laurel Sand*, 519 F.3d at 161.

Here, as both Westmoreland and the County agree, the first two conditions are met.  *See* Mem. Supp. of Mot. Dismiss at 11-12; Resp. in Opp'n at 13.  The judgment in *Westmoreland,* No. AW-09-2453, was final and on the merits, and the parties in this action are identical to the parties in that prior action.  Where the parties disagree is whether the claims in this lawsuit are based on the same transaction or series of transactions as those in the first lawsuit.  Citing *Serna v. Holder*, 559 F. App'x 234, 238 (4th Cir. Mar. 6, 2014), the County argues that Westmoreland's discriminatory discipline claims (Counts III and V) and constructive discharge claims (Counts IV and VI) were all tried in her first case. Mem. Supp. Mot. Dismiss at 13.  As to the constructive discharge claims, the County admits that Westmoreland did not plead those claims in her Complaint, but maintains that the claims were tried by "implied consent."  *Id.*  The County makes no argument that Westmoreland's remaining claims (Counts I and II) were tried in the first case, but asserts that they are precluded because Westmoreland could have amended, but did not amend, her complaint in the first case to include those claims.  *Id.*

In response, Westmoreland emphasizes that the current case focuses on a "later time period"—her tenure at Station 40—and notes that this period is separated from the prior case by "time, space, origin and motivation."  Resp. in Opp'n at 14.  She therefore rejects the County's contention that the constructive discharge and discriminatory discipline claims were fully litigated at the first trial, *id.* at 15, and that she was obligated to amend her Complaint to include

the remaining claims, noting that she did not receive her right-to-sue letter based on the Station 40 events until her first case was well underway. *Id.* at 16.

Because of its ruling that Counts I, V, and VI are dismissed for failure to exhaust administrative remedies, the Court will consider this issue only as it relates to Counts II, III, and IV. There is no question that the two cases filed by Westmoreland are connected in that they both relate to Westmoreland's career at the Department. As Westmoreland notes, however, they also deal with two distinct time periods and places: her time at the Academy and her tenure at Station 40. The filings and trial proceedings in the first case bear out this demarcation. Westmoreland's Complaint in the first case does not detail any alleged harassment or discrimination by her colleagues at Station 40, nor did she discuss her experience at Station 40 in any detail during her testimony. At trial, the Court refused to allow any evidence of the counseling Westmoreland underwent while at Station 40 because it had "no connection" to facts at issue. *Westmoreland,* No. AW-09-2453, April 8, 2013 Trial Tr. at 9. Most tellingly, the County itself insisted that the scope of the first trial was limited to Westmoreland's allegations about the Academy. In its two Motions *in Limine*, the County sought to preclude any evidence relating to Westmoreland's second EEOC charge, arguing that if such evidence were not precluded, Westmoreland would "have two bites at the apple because she could raise these allegations in the instant case and then file a second lawsuit in federal court raising these same allegations again." *Westmoreland,* No. AW-09-2453, Mem. Supp. Second Mot. *in Limine* at 8; *see* April 8, 2013 Trial Tr. at 5-9. Thus, the facts at issue and disputes resolved in *Westmoreland,* No. AW-09-2453, were those arising from events at the Academy. Accordingly, to the extent that Westmoreland's current causes of action allege discrimination based on events at Station 40, the Court finds that, unlike in *Serna*, they arise from a different series of

18

transactions and therefore are not precluded by that prior litigation. *See Serna*, 559 F. App'x at

238; *Pueschel v. United States*, 369 F.3d 345, 355 (4th Cir. 2004) (explaining that whether a

claim is precluded "turns on whether the suits and the claims asserted therein arise out of the

same transaction or series of transactions or the same core of operative facts") (internal citation

and quotation marks omitted).

Applying this standard, Count III is precluded. Count III alleges retaliation based on

"unwarranted and unfair discipline from 2006-2007" stemming from Westmoreland's October

20, 2006 EEOC Complaint. Am. Compl. ¶ 82. There were seven disciplinary actions during this

period. On October 18, 2006, Westmoreland was given two written disciplinary notices; on

November 14, 2006, she was given a third disciplinary notice; on November 16, 2006, she was

given a fourth disciplinary notice; on December 5, 2006 she was given a fifth disciplinary notice;

on March 22, 2007, she was suspended for four days without pay; and on May 15, 2007, she was

given a final disciplinary notice.[3]  Am Compl. ¶¶ 27, 30, 32, 34, 40, 43.  Westmoreland's own

allegations make clear that these disciplinary actions were taken in response to her actions while

at the Academy.  She links the October disciplinary notices to an altercation she had with another

Academy instructor and her involvement in an investigation into an Academy employee's

allegedly "inappropriate remarks." *Id.* ¶ 27. She connects the November notices, the March

suspension, and the May notice to her alleged involvement in the cheating scandal. *Id.* ¶¶ 30,

32, 40, 43.  And she characterizes the December notice as one based not on any new factual

allegations, but on her having multiple disciplinary notices in October and November. *Id.* ¶ 34.

---

[3] The Department divided its disciplinary actions into three tiers. Tier I is a verbal warning; Tier II is a written notice placed in the employee's personnel file; Tier III is a formal charge which can lead to an adverse employment action such as suspension or termination. *See Westmoreland*, No. AW-09-2453, April 8, 2013 Trial Tr. at 88; Am. Compl. ¶ 27. The disciplinary actions taken against Westmoreland in 2006 and 2007 were either Tier II or Tier III actions. *See* Am. Compl. ¶¶ 27, 30, 32, 34, 40, 43.

As the culmination of events at the Academy, the 2006-2007 disciplinary actions were thoroughly litigated in the 2013 trial.  Westmoreland testified about the escalating series of notices and her ultimate suspension.  *See Westmoreland,* No. AW-09-2453, April 8, 2013 Trial Tr. at 87, 90, 92.  In addition, the October and December disciplinary notices were admitted into evidence, as was the letter informing Westmoreland of her March suspension.  *See id.*; Plaintiff's Trial Exhibit List: Exs. 17 & 19, ECF No. 92; Joint Exhibit List, Exs. 22 & 23, ECF No. 94. Because Westmoreland has already fully litigated the issues she raises in Count III, that count is barred by *res judicata.*

Counts II and IV, however, are not precluded.  Count II, alleging retaliation in the form of removal from duty is based on allegations stemming entirely from events at Station 40. Specifically, Westmoreland asserts that she was suspended from work at Station 40 based on a December 9, 2008 complaint she filed with her Station 40 supervisor. It thus arises from a transaction distinct from the events at issue in Westmoreland's first case.

Count IV, alleging retaliation in the form of constructive discharge, is a closer call.   At the trial on her earlier case, Westmoreland argued that she had stated a claim for constructive discharge in her Complaint and sought to introduce evidence on that issue. When the County disagreed, Westmoreland maintained that, at a minimum, she had raised the claim through notice pleading. Although Judge Williams agreed with the County and ruled that she had not pleaded constructive discharge, Westmoreland's representations in 2013 thus make clear she certainly *could* have pleaded a claim for constructive discharge in her first case, because in her estimation she had done so.  Because she could have pleaded constructive discharge, Westmoreland would be precluded from raising that same claim in this case. *Laurel Sand*, 519 F.3d at 161.

But the constructive discharge claim that Westmoreland could have raised in the first case is not the same as the constructive discharge claim raised in Count IV. Westmoreland's first lawsuit was based on and confined to events at the Academy and their direct aftermath. As discussed above, the County itself insisted on this narrow scope. Any constructive discharge claim Westmoreland could have litigated in her first case, then, would have been limited to claiming that the events at the Academy and the disciplinary actions stemming from those events effectively compelled her to resign from the Department in 2009. The preclusive effect of that litigation is thus identically limited. *Pueschel,* 369 F.3d at 355.

Construed in the light most favorable to Westmoreland, Count IV alleges that she was effectively forced to resign in 2009 by an ongoing series of abusive acts against her during her tenure at Station 40 that were committed in retaliation for Westmoreland making formal and informal EEO complaints after she arrived at Station 40, beginning with the filing of an EEOC Charge on October 20, 2006.[4] Am. Compl. ¶¶ 86-92 (also incorporating ¶¶ 1-85). Because those complaints and the allegedly abusive acts at Station 40 were not the subject matter of the first case—and were in fact largely excluded from the first trial—Count IV is not precluded by *res judicata.* It therefore remains in the case, but with its scope limited to events, other than delivery of the disciplinary notices, occurring after Westmoreland's transfer to Station 40.

---

[4] Westmoreland's retaliation claim in the first case was primarily keyed to her June 30, 2006 internal EEO complaint relating to events at the Academy, which she successfully alleged at trial triggered her transfer to Station 40. Although the October 2006 EEOC Charge was the formalization of Westmoreland's June 30, 2006 internal EEO Complaint, it was not filed until after Westmoreland had been transferred to Station 40 and therefore was not the basis for that retaliatory action.

## IV.    Statute of Limitations

### A. Federal Claims

The County asserts that Counts II, III, and V of Westmoreland's Complaint are time-barred under Title VII.[5]  Because Count III is barred by *res judicata* and Count V is dismissed for failure to exhaust administrative remedies, the Court considers the statute of limitations argument only in relation to Count II.  Pursuant to Title VII, a plaintiff generally must file a discrimination charge with the EEOC within 180 days after the alleged unlawful employment practice. *Prelich v. Med. Resources, Inc.,* 813 F.Supp.2d 654, 661 (D. Md. 2011).  That limitations period is extended to 300 days in a "deferral state," a state "in which state law proscribes the alleged employment practice and the charge has initially been filed with a state deferral agency." *Id.* (citations and internal quotation marks omitted).  Maryland is a deferral state, and Maryland's "deferral agency, the Maryland Commission on Human Relations (MCHR), has a work-sharing agreement with the EEOC providing that a claim filed before one commission is effectively filed before both." *Valderrama v. Honeywell Tech. Solutions, Inc.,* 473 F.Supp.2d 658, 662 n.4 (D. Md. 2007); *see* 29 C.F.R. § 1601.74 (designating MCHR as a Fair Employment Practices agency).  Thus, in Maryland, a complainant has 300 days in which to file a charge of discrimination under Title VII.

According to Westmoreland, she filed her second charge with the EEOC on September 29, 2009. Am. Compl. ¶ 58.  A September 29, 2009 filing date thus limits the charges to events occurring on or after December 3, 2008.  Because Count II is based on Westmoreland's

---

[5] The County asserts that Westmoreland's § 1983 claims are also time-barred. Mem. Supp. Mot. Dismiss at 16.  In paragraph 1 of her Amended Complaint, Westmoreland indicates that she is filing suit under 42 U.S.C. § 1983, but in her individual causes of action she makes no reference to § 1983.  At the hearing, Westmoreland's counsel clarified that she is no longer pursuing § 1983 as a theory of liability. *Westmoreland v. Prince George's County*, TDC-14-0821, Feb. 4, 2015 Hearing at 3:32 p.m.

22

December 9, 2008 complaint to her supervisor and her allegedly retaliatory removal from duty on January 19, 2009, it falls within the allowable time period.  The County, however, calculates the time differently, based on its assertion that Westmoreland did not file her second complaint until December 18, 2009, which would limit claims to events occurring on or after February 21, 2009.  Westmoreland asserts that the County's December 18, 2009 date is the result of "irregularities and changes in the EEOC filing process," Resp. in Opp'n at 22 n.1, and noted in her supplemental filing that the EEOC intake form for her second Charge is dated September 29, 2009.  Westmoreland Supp. Resp. in Opp'n, Ex. A, ECF No. 19-1.  Because the Court construes the facts in favor of the non-moving party, the Court adopts Westmoreland's date for purposes of this Motion.  *Albright v. Oliver*, 510 U.S. 266, 268 (1994).  Accordingly, the County's Title VII statute of limitations argument on Count II fails.

### B.  State Claims

The County asserts that all of Westmoreland's state claims under the MFEPA are barred by the statute of limitations.[6]  Mem. Supp. Mot Dismiss at 17.  The MFEPA allows an individual to bring a civil action for employment discrimination if three criteria are satisfied:

> (1)  the complainant initially filed a timely administrative charge or a complaint under federal, State, or local law alleging an unlawful employment practice by the respondent;
>
> (2)  at least 180 days have elapsed since the filing of the administrative charge or complaint; and
>
> (3)  the civil action is filed within 2 years after the alleged unlawful employment practice occurred.

---

[6] In Count VI of her Amended Complaint, Westmoreland alleges that she was the subject of discrimination in violation of the Maryland Human Rights Law.  Am Compl. ¶ 104.  At the hearing, Westmoreland's counsel explained that the reference to the Maryland Human Rights Law was a drafting error and that Westmoreland was instead alleging a violation of the MFEPA. *Westmoreland v. Prince George's County*, TDC-14-0821, Feb. 4, 2015 Hearing at 3:32 p.m.

Md. Code, State Gov't § 20-1013(a)(1)-(3).  Westmoreland satisfies the first two requirements: (1) as noted above, in 2009, Westmoreland filed a timely administrative charge with the EEOC; and (2) more than 180 days have elapsed since she filed that charge.  As to the third requirement, the last discriminatory act that Westmoreland alleges is her constructive discharge, which occurred when she resigned from the Department on October 8, 2009.  Westmoreland filed suit March 20, 2014, more than four years after that alleged unlawful employment action.  That filing date puts Westmoreland well outside the two-year limit set forth in the statute.

There is no provision in the MFEPA to toll the two-year statute of limitations while the administrative process unfolds.  Westmoreland argues that the statute creates a "completely unreasonable situation for plaintiffs" because it requires them to exhaust their administrative remedies but also file suit within two years.[7]  Westmoreland Supp. Resp. at 3, ECF No. 19.  But the exhaustion requirement in MFEPA is not as robust as the one under Title VII.  Title VII requires a complainant to file an administrative charge and then permits a complainant to file suit only after the agency has investigated that charge and determined that it will not pursue it.  *See* 42 U.S.C. § 2000e-5(f)(1).  The MFEPA, by contrast, requires only that a complainant *file* an administrative charge, then wait 180 days before filing suit. With no requirement that a complainant see the state administrative process through to its end, the MFEPA's two-year statute of limitations is perhaps not the untenable requirement Westmoreland makes it out to be. To be sure, these differing approaches to exhaustion and the statute of limitations may place plaintiffs in the position of having to decide between pursuing remedies under the federal

---

[7] Although Westmoreland asserts that *Higgins v. Maryland Dep't of Agriculture*, No. L-11-0081, 2012 WL 665985 (D. Md. Feb. 28, 2012), stands for this proposition, that case is more fairly read to identify an exhaustion requirement in the federal Rehabilitation Act, not the MFEPA, where the parties agreed that the two statutes provide the same substantive protections and elements of proof. *Id.* at *5.

statutory scheme or the state statutory scheme, but to interpret MFEPA otherwise would ignore the plain language of the statute. *See Dale v. Maryland Dept. of Transp.*, No. ELH-13-0191, 2015 WL 221628 at *20-21 (D. Md. January 15, 2015) (rejecting an argument for a tolling provision under the MFEPA because the statutory language "unambiguously commands" that all three requirements of the statute be satisfied, "not just any one of them"). Accordingly, all of Westmoreland's claims under the MFEPA are barred by the statute of limitations and thus are dismissed with prejudice.

Because all of Westmoreland's state claims are dismissed on this basis, the Court need not address the County's additional argument that Westmoreland's state claims are barred because she failed to provide the requisite notice of tort claims under the Local Government Tort Claims Act, which generally obligates plaintiffs to give local governments notice of a tort claim for unliquidated damages within 180 days after the injury. Md. Code, Courts and Judicial Proceedings, § 5-304(b)(1). *See* Mem. Supp. Mot. Dismiss at 18.

## V.      Laches

The County further asserts that Westmoreland's suit is barred by the doctrine of laches because there was an "inexcusable" five-year delay between Westmoreland's filing of her 2009 EEOC Complaint and the filing of this lawsuit. Mem. Supp. Mot. Dismiss at 8-11. There are two elements required to invoke the equitable doctrine of laches in EEOC cases: (1) an inexcusable delay in bringing an action; and (2) undue prejudice to the defendant. *Holsey v. Armour & Co.,* 743 F.2d 199, 211 (4th Cir. 1984). When evaluating the reasonableness of a delay, courts are reluctant to penalize plaintiffs who have simply waited for the EEOC (or its state counterpart) to act. *See, e.g., id.* (holding that laches was not applicable to a plaintiff who

filed her action 4 1/2 years after her EEOC charge because the delay was due to her decision to wait for the completion of the EEOC administrative process).

In a chronology that closely parallels the one in *Holsey*, Westmoreland filed her Complaint in September 2009, and the EEOC did not complete its investigation until December 2012, when it began the conciliation process.  That process broke down at some point in the next year, and the EEOC issued Westmoreland her right-to-sue letter in December 2013. Westmoreland filed this suit only three months later, in March 2014.  The Court finds that Westmoreland's decision to wait for the EEOC's process to be completed does not constitute "inexcusable delay."  *See id.* at 211 ("We hold that [the plaintiff's] decision to rely on the commission's administrative process before initiating a private suit is not inexcusable delay."). Indeed, it would make little sense to fault Westmoreland for seeing the EEOC's administrative process through to completion: unless and until she exhausted her administrative remedies, this Court would lack jurisdiction to hear her case. *See Jones,* 551 F.3d at 300.

The County's citation to *Boone v. Mechanical Specialties Co.*, 609 F.2d 956 (9th Cir. 1979) is unpersuasive.  The County reads *Boone* as holding that a plaintiff cannot "merely rely[] on EEOC conciliation procedures," but must instead "*affirmatively* pursue her rights."  Mem. Supp. Mot. Dismiss at 9 (emphasis in original).  In *Boone*, however, the EEOC "informed Boone on several occasions that he could have a right-to-sue letter," and Boone was "advised that the EEOC would assist him in bringing an action in the courts."  *Boone*, 609 F.2d at 960.  Despite these urgings, Boone waited seven years to file suit.  It was Boone's failure to act after the administrative proceedings had concluded—not, as the County suggests, that Boone merely allowed the administrative process to run its course—that prompted the Ninth Circuit to conclude that Boone had "sle[pt] on his rights." *Id.* at 959-60.  *Boone* is thus unlike the present

26

case, in which Westmoreland promptly filed suit after the close of the EEOC's administrative process.

The other cases cited by the County at the February 4, 2015 hearing are no more persuasive. In *Pande v. Johns Hopkins University*, 598 F. Supp. 1084 (D. Md. 1984), there was a ten-year gap between Pande's filing of his EEOC charge and his decision to file suit. *Id.* at 1086. Although the EEOC took nine years to complete its investigation, the court found that Pande had failed diligently to pursue his claim because for seven of the ten years because Pande was living in India and had "little to no contact" with the EEOC about his charge. *Id.* at 1087. Here, the alleged delay was five years shorter, and there is no suggestion that Westmoreland effectively abandoned her EEOC charge, only that she allowed it to make its way through the EEOC's administrative process. In *EEOC v. Martin Processing, Inc.*, 533 F. Supp. 227 (W.D. Va. 1982), the court dismissed the case on laches grounds because the EEOC, which was the plaintiff filing suit on behalf of the complainants, was itself responsible for a series of delays, including a two-year delay between when the complainants filed their charges and when the EEOC first informed the defendant of those charges. *Id.* at 229-30. By contrast, Westmoreland is not responsible for the length of the EEOC process, and in any event the EEOC promptly informed the County of and initiated an investigation into Westmoreland's September 2009 charges, as evidenced by the County's April 2010 Position Statement to the EEOC in response to Westmoreland's allegations. *See* County Supp. Resp., Ex. 2, ECF No. 20-3. Because the County has not established that Westmoreland unreasonably delayed filing this suit, Westmoreland's claims are not barred by the doctrine of laches. The County's motion to dismiss on this ground is therefore denied.

## VI.    Causation

The County also claims that Counts II, III, and IV should be dismissed under Rule 12(b)(6) because the allegations in the Complaint fail to establish causation between Westmoreland's complaints to management and the allegedly retaliatory activity.   Because Count III is barred by *res judicata*, the Court considers the County's argument only with respect to Counts II and IV.

To establish a *prima facie* case of retaliation under Title VII, plaintiffs must show that they engaged in a protected activity, that the employer took an adverse employment action, and that there is a causal connection between the protected activity and the adverse action.  *Price v. Thompson,* 380 F.3d 209, 212 (4th Cir. 2004).  The Supreme Court has recently clarified that to succeed on a claim of retaliation, a plaintiff must establish that the protected activity was the "but-for cause" of the alleged adverse action. *Univ. of Tex. Southwestern Med. Cntr. v. Nassar,* 133 S.Ct. 2517, 2534 (2013).  But-for causation "requires proof that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer." *Id.* at 2533.

The allegations underpinning Count II are that on December 9, 2008, Westmoreland submitted a complaint to her supervisor about the conditions at Station 40 and that Westmoreland was removed from duty on January 19, 2009 in retaliation for that complaint. The County argues that this chronology fails to allege the necessary causal connection because the allegedly adverse action "occurred two to three years after" the protected activity.  Mem. Supp. Mot. Dismiss at 20.  The County arrives at this conclusion because it reasons from the faulty premise that only Westmoreland's two EEOC charges, one filed on October 8, 2006 and the other on September 29, 2009, can serve as the relevant protected activity. *See id.*  But it is

not only filing an EEOC charge that is shielded under Title VII. Lodging a complaint with supervisors about allegedly discriminatory practices is also a protected activity. *Bryant v. Aiken Reg'l Med. Ctrs., Inc.*, 333 F.3d 536, 543-44 (4th Cir. 2003). The relevant chronology is thus the one Westmoreland initially asserted: a December 9, 2008 protected activity followed by a January 19, 2009 adverse action. Westmoreland argues that the "close proximity of time" between these events—little over a month—is sufficient to allege a strong enough causal connection for her claim to overcome a Motion to Dismiss. Resp. in Opp'n at 23. She is correct. A "very close" temporal proximity between a protected activity and an adverse action is enough to establish causation. *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001). Courts have found very close temporal proximity when the protected activity and adverse action were six weeks apart. *See, e.g., O'Neal v. Ferguson Const. Co.*, 237 F.3d 1248, 1253 (10th Cir. 2001). Although mere temporal proximity does not establish that Westmoreland's protected activity was the "but-for" cause of the subsequent alleged adverse action, such a showing is not necessary at this preliminary stage, when Westmoreland has not yet had the opportunity for discovery. At this point, Westmoreland's showing of a temporal proximity of just over one month between her complaint and her removal from duty is enough to allege causation for purposes of the County's Motion to Dismiss. The County's Motion to Dismiss Count II for failure to establish causation is therefore denied.

As discussed above, Count IV is fairly read as alleging retaliation against Westmoreland for her filing of the October 20, 2006 EEOC charge and subsequent informal complaints about her treatment at Station 40 that culminated in her constructive discharge. Am Compl. ¶¶ 86-92. Although a three-year gap between the initial protected activity and the alleged constructive discharge does not fairly allege causation by temporal proximity, courts may look to the

intervening period for evidence of "continuing retaliatory conduct and animus" to support causation *Lettieri v. Equant Inc.,* 478 F.3d 640, 650 (4th Cir. 2007) (internal citation and quotation marks omitted).   Here, Westmoreland alleges just such a pattern of conduct.   She asserts that throughout her time at Station 40, up to and including 2009, she was "subjected to repeated acts of insubordination and hostility" on the part of her co-workers. Am Compl. ¶¶ 36, 44, 48, 51.  She further alleges that she repeatedly reported that behavior to her supervisors, but that her supervisors either ignored her complaints or blamed the conflicts on her, resulting in removal from duty and a mandatory referral to counseling.   *Id.* ¶¶  45, 48-51.  With the Department taking no steps to curb the abuse, in February 2009, her psychiatrist ordered her to stop working due to the stress.  *Id.* ¶ 53.  Although she returned to work on non-operational status, the Department ordered her to full operational status over her doctor's objection, which forced her to exhaust her sick leave in order to continue her treatment and eventually to resign in order to avoid having to return to the abuse.  *Id.* ¶¶ 54-57. At this stage of litigation, these allegations sufficiently illustrate a pattern of retaliatory animus resulting in constructive discharge. *See Templeton v. First Tenn. Bank, N.A.*, 424 Fed. App'x 249, 251 (4th Cir. 2011) (reversing grant of a motion to dismiss because allegations by the plaintiff that her employer failed to respond to her complaints of harassment and failed to prevent continued harassment by a co-worker constituted a pattern of retaliatory animus sufficient to allege causation). *See also Weintraub v. Mental Health Auth. of St. Mary's, Inc.*, No. DKC-08-2669, 2010 WL 4868095 at *8 (D. Md. Nov. 23, 2010) (finding that, on a motion for summary judgment, plaintiff established causation based on employer's pattern of conduct in the wake of plaintiff's protected activity which included giving plaintiff a below-average performance review, putting her on

probation, increasing her supervision, and compelling her to enter counseling).  Thus, the Motion to Dismiss Count IV on the basis of a failure to establish causation is denied.

## VII.   Remaining Claims

Because Counts I, V, and VI are dismissed for failure to exhaust administrative remedies, the Court need not address the County's remaining arguments that (1) Counts V and VI, which allege gender discrimination based on disparate treatment in discipline and through constructive discharge, respectively, must be dismissed because Westmoreland has "failed to plead sufficient facts to show that similarly situated employees outside her protected class were treated differently," Mem. Supp. Mot. Dismiss at 22; and (2) that judicial estoppel bars Count I, which alleges hostile work environment based on gender.

Nor does the Court consider the wholly new argument—that Westmoreland fails to state a claim for constructive discharge—that the County asserts in its supplemental filing, submitted after full briefing and oral argument on the Motion.  *See* County Supp. Resp. at 8-11.  To the extent that this argument goes beyond the issue of causation raised in the Motion and addressed in the previous section, the Court construes it as a second motion to dismiss that is barred by Federal Rule of Civil Procedure 12(g)(2), which prohibits parties from filing a second Rule 12 motion if that motion "rais[es] a defense or objection that was available to the party but omitted from its earlier [Rule 12] motion."

## CONCLUSION

For the foregoing reasons, the County's Motion to Dismiss, or in the Alternative for Summary Judgment, ECF No. 11, is treated as a Motion to Dismiss and is GRANTED with respect to Counts I, III, V, and VI, and DENIED with respect to Counts II and IV.  Count IV may proceed to the extent that it is limited in scope to events occurring at Station 40.


Date: March 4, 2015

_____
THEODORE D. CHUANG
United States District Judge